186    COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,    Kuhn, Netter & Co. vs. Mack & Bro's.    1870.

# Wheeling.

## KUHN, NETTER & CO. vs. MACK & BROTHERS.

### January Term, 1870.

1. It is not error to hear and determine a chancery cause, if it is ready for hearing, although not formally set for hearing as to all the parties, no objection being made for that reason.

2. A bill may be dismissed at the same term that the injunction is dissolved, if the cause is heard upon its merits.

3. If the court pronounces an erroneous decree in relation to the interest of parties who are not in court, that does not prejudice parties who are in the suit, it is not matter of which the latter can complain.

4. The trustee or *cestui que trust* cannot go into a court of equity to enjoin a sale of trust effects under an execution issued and levied by virtue of a subsequently acquired judgment, there being a complete and adequate remedy at law.

5. A reservation to the grantor in a trust deed conveying personal property, which is inconsistent with the object of the trust and adequate to the defeat thereof, is null and void as to creditors.

William H. Busch, being largely indebted to Mack & Bros., on the 26th day of November, 1866, executed to one P. L. Wilson, a deed conveying a leasehold estate claimed by him in a store-room in Parkersburg, occupied by him as a clothing store, and also certain rooms occupied and used by him as working rooms for making up clothing, together with the counters, shelves, and fixtures of said store-room, the sewing machines and tailors' implements in the room, and all cloth goods, wares, merchandise, and stock then in the store-room, or that might be placed therein in renewal of stock, in trust to secure the payment of several debts due

Kuhn, Netter & Co., Hull & Flanagan, J. R. & T. S. Phillips, and Marcus, Fichheimer & Co. A further provision stipulated that if there was a failure to pay off the debts in one year from date, or if Busch attempted to remove the goods, "except such part of said stock as may be sold in the regular course of his business," &c., that the trustee might enter and sell, &c. The deed was duly acknowledged by Busch, and admitted to record on the 27th day of November, 1866. Subsequently to this Mack & Brothers obtained a judgment, in the circuit court of Wood county, against Busch, for a debt amounting to 2,388 dollars and 93 cents, with interests and costs; upon which they afterwards, to wit: on the the 9th day of May, 1867, caused an execution of *fieri facias* to issue, which was levied by the sheriff upon the stock of goods, &c., which had been thus previously conveyed to secure the debts due Kuhn, Netter & Co., &c. The latter firm and the other trust creditors filed a bill in the circuit court of Wood county, in June, 1867, setting up their deed of trust and the rights acquired by them, and stating the ruinous sacrifice that would follow if the goods should be sold under the unlawful levy that had been made, and praying the court to protect them by an injunction to restrain such sale, and for general relief.

At the September term, 1867, the defendants, Mack & Brothers, answered the bill. They admitted the execution of the trust deed, and that they had caused their execution to be levied upon the property mentioned in the bill. They did not deny the existence or the justness of the debts intended to be secured by the deed, but they charged that the same was made with intent to hinder, delay, and defraud the creditors of Busch, and they relied upon the fact that Busch retained the possession and use of the property conveyed as the evidence thereof.

They also stated that, at the time of the execution of the trust deed, Busch had, by deed dated 23d of November, 1866, conveyed to one Philip Dolmeyer, in trust for the use and benefit of his wife, and to indemnify her for the maiden

property which had gone to the use of Busch, estimated to be of the value of 1000 dollars, a lot in the city of Parkersburg, of 30 feet front, and running back 94 feet, and they exhibited a copy of this deed with their answer. They also referred to and exhibited another deed made by Busch to P. L. Wilson, dated the 15th of April, 1867, by which he conveyed certain book accounts omitted in the deed of the 26th of November, 1866, for the same uses and purposes expressed in the last named deed, and these deeds were relied on as evidence of the fraudulent character of the deed of the 26th of November, 1866. They also denied that the goods levied on were the same goods that were on hand when that deed was executed, and charged that they were other and different goods acquired by Busch, after the assignment made by him to Kuhn, Netter & Co.

On filing this answer, the defendants gave notice of motion to dissolve the injunction. No replication was filed to the answer, nor was the cause at any time set for hearing as to all the parties.

At the April term, 1868, the decree of the court states that the cause came on "to be heard on the bill and exhibits filed therewith, answer of the defendants, with replication thereto, and exhibits filed therewith, and the proofs taken in the cause, and was argued by counsel," and the court pronounced a final decree, declaring that the deed of trust given to secure the complainants, Kuhn, Netter & Co., &c., had been made to hinder and delay creditors, and was, therefore, fraudulent and void. The injunction was also dissolved and the bill dismissed with costs. Leave was given the defendants to withdraw the injunction bond, for the purpose of securing a recovery thereon, to be applied as a credit to the writ of *fieri facias* of Mack & Bros., and it was further provided that if such recovery should not be sufficient to satisfy the writ of *fieri facias* and costs of suit, that the property conveyed to Dolmeyer for the benefit of the wife of Busch, should be charged with a lien to the extent of such deficit; and this latter deed was also declared to

have been executed with intent to hinder and delay credit-
ors, and was therefore fraudulent and void. All of the
parties mentioned in the trust deed were complainants in
the cause, and Mack & Bros., and Mattingly, the sheriff of
Wood county, were the defendants.

The complainants appealed from the decree, and alleged
error as follows:

"1. It was error for the court to hear the cause and pro-
nounce a final decree in the same at the time it did, no repli-
cation having ever been put in to the answer nor any dispo-
sition taken on behalf of your petitioners, and the cause
having never been set for hearing regularly or otherwise.

"2. If the court could properly have dissolved the injunc-
tion (which your petitioners, however, do in no manner ad-
mit), it was error for the court to go on at the same time
and dismiss your petitioners' bill. It should have stood over
until the next term, to give your petitioners opportunity to
show cause against such dismission. (Code, ch. 179, § 14.)

"3. It was error for the court to undertake to pass on the
deed to Dolmeyer for the benefit of Mrs. Barbara Busch,
and to pronounce it fraudulent and void, and to charge the
property thereby conveyed with the debt due to the defen-
dants. Neither the said Busch, nor the said Dolmeyer, nor
the said Barbara Busch, was a party to the cause.

"4. If the decree had been otherwise right, (which, how-
ever, your petitioners do in no manner admit,) it was error
for the court to pronounce the deed of trust absolutely void
instead of void as to the said defendants in respect of their
debt, and thus to deny your petitioners the right to the sur-
plus, after satisfying the defendants' demand to a proper
account.

"5. And chiefly: On the merits, it was error for the
court to pronounce the deed void, and to deny to your peti-
tioners proper relief on their bill."

"1. There was nothing in the terms or provisions of the
said deed of trust which stamped it as fraudulent upon its
face.

" 2. There was no legal or sufficient proof in the cause that the debts due your petitioners, or any of them, were not just and *bona fide*, or that the said deed was made with the fraudulent intent imputed in the answer, or under such circumstances as would bring it within the provisions of the statute which denounces and avoids conveyances made with intent to delay or defraud creditors, purchasers, or others."

Hon. Geo. H. Loomis, judge of the circuit court of Wood county, presided on the hearing of the cause.

*Lee* and *Hutchinson* for the appellants.

*Jackson & Small* for the appellees.

The decree shows that the cause was heard upon the bill, answer, and replication thereto. The cause was regularly heard and fully argued, and in such case, the cause will not be retained for any further proceedings, but the bill will be thereupon dismissed with costs. *Rowton* vs. *Rowton*, 1 H. & M., 110; *Byrne* vs. *Lyle*, 1 H. & M. 7.

The injunction was granted on the 10th of May, 1867, and the cause was heard and decree pronounced, 27th of April, 1868. If the appellants did not take depositions, it was their own omission, and it is no ground of complaint on their part.

The cause was heard without any objection on the part of the appellants, and consent will be inferred, and though it had not been regularly set for hearing, in such a case, the rule is the same as if it had been set for hearing, viz: the answer, whether responsive to the bill or not must be taken as true. 2 Rob. Old Prac., p. 312, and authorities there cited.

Again, the statute provides that no decree shall be reversed for want of replication to the answer, where the defendant has taken depositions as if there had been a replication. Code of 1860, chap. 181, sec. 4.

The bill shows upon its face that the party was not enti-

tled to an injunction. There was no equity in the bill; equity has no jurisdiction to enjoin the sale of property seized on execution, on the application of a third party claiming the possession on the ground of prior incumbrance, or as trustee of the property. Hilliard on Injunction, page 212. *Watkins* vs. *Logan*, 3 Mun., p. 20; *Bowyer* vs. *Creigh*, 3 Rand., p. 25; *Allen* vs. *Friedland*, 3 Rand., p. 170.

Where the object of a bill will be answered by restraining the proceeds of a sheriff's sale in his hands, the sale of the property ought not to be enjoined. 3 Green., ch. 322.

The court below, as the decree shows, did not vacate the deed made by Busch to Dolmeyer, for the benefit of Mrs. Barbara Busch, but only expressed the opinion that the deed was void, and expressed the further opinion that the judgment of Mack & Bros. was a lien upon the lot of land therein conveyed. The opinion upon that question does not in any way affect the interest of W. H. Busch, or his wife, or Dolmeyer; and if there is any error in the opinion of the court so expressed, it will be regarded as surplusage.

If the deed was fraudulent and made to hinder and delay creditors, it was wholly void. It could not be void as to defendants in respect to their debts, and good for any other purpose.

As to the merits, it was proper to declare the deed void, for by the terms and provisions of the deed, it was fraudulent upon its face, and although it was made to secure just and *bona fide* debts, the trust that the grantor should remain in possession of the property, deal with and sell it, in the usual course of business, and that the trustee should not take possession of it, unless some one claiming against the grantor should attempt to take possession of the property named in the deed, rendered it fraudulent on its face. In the case of *Spence* vs. *Bagwell*, 6 Gratt., p. 444, the deed of trust was held to be fraudulent on its face, though executed to indemnify a *bona fide* surety, and in that case, provision was made that the grantor who remained in possession of the property, should pay over the proceeds of the sale of

the property to the trustee. In this case, there was no provision of that kind; no restraint was placed upon the grantor, the deed provided that he might dispose of the whole property in any way he might see fit, in the regular course of business, for cash or credit, on long or short time, without accounting to any person whomsoever, and by the very terms of the deed, the trustee was prohibited from taking possession of the property unless some person claiming against the grantor should attempt to take possession of it. The fraud here is palpable: it is plain that the deed was a mere device to hinder and delay creditors; that it was a mere sham, and that there was no reality in it. The possession of the property, and the privilege of selling and trading in it was inconsistent with the deed, and it was, therefore, fraudulent. *Sheppards* vs. *Turpin*, 3 Gratt., 373. *Lang* vs. *Lee*, 3 Rand., 410.

This case is stronger than either of the three cases just referred to, because the grantor in those cases is required to account. In this case the deed requires nothing of the kind, but provides that the grantor shall keep possession of the property conveyed, (a stock of goods,) and sell the same and carry on his business as usual. The deed is void, also, because the reservations contained in it are for the benefit and advantage of the grantor. *Anderson et al.* vs. *Fuller et al.*, 1 McMullen's Equity, p. 27.

The appellees have not contented themselves with the evidence of fraud afforded by the deed itself, but have taken proof, showing, beyond a question, that the conveyance of the property was a concocted scheme on the part of the grantor, formed four or six weeks prior to the date of the deed, and the fact of the existence of that intention was known to the trustee, P. L. Wilson, and it is further shown by proof, that it never was the intention or purpose to pay anything to the creditors secured by the deed. It is proved that after the date of the deed, payments were made to creditors not named in the trust, and that none were made to those who were named, and that both the grantor and

trustee declared their purpose to settle up with the outside creditors, and then they would settle up with the creditors named in the trust, and that the grantor wanted to make something out of it. That the grantor said he had got the parties named in the trust just where he wanted them, and if they made any fuss about it, they declared their purpose to turn their stock over to the sheriff, and let him sell it under the execution in favor of appellees; and notwithstanding this strong proof of fraud on the part of the parties to the deed, not the least effort is made on the part of the defendants to rebut it by the depositions of either the grantor or trustee, although they resided in the city of Parkersburg, where their testimony could have been taken at any time, and more than seven months had elapsed from the time the appellee's depositions were taken, and the date of the decree.

These are strong indications of fraud; and there are other facts proven, as the record shows, which afford yet stronger evidence of the fraudulent purposes of the grantor.

MAXWALL, J. The first error assigned in this case is, that it was error for the court to hear the cause and pronounce a final decree in the same at the time it did. The bill was filed at the June rules, 1867, and at the July rules the cause was set for hearing as to Mattingly, and at the September rules the defendants, Mack & Brothers, filed their answer, and gave notice to dissolve the injunction. At the April term, 1868, the injunction was dissolved and the bill dismissed. The decree shows that the cause was heard upon bill and exhibits filed therewith, the answer of the defendants with replication thereto, and the proofs taken in the cause and was argued by counsel. There does not appear to be any error in hearing the cause when it was heard, as it seems to have been ready for hearing, although not formally set for hearing, as to all the parties, but no objection was made to a hearing, for that reason. *Brakeleys* vs. *Tuttle*, 3 W. Va. Rep., 86.

The next cause assigned as error. is, that if the court could properly have dissolved the injunction, it was error to dismiss the bill at the same term. There can be nothing in this assignment of error, because the cause was heard upon its merits.

The appellants claim in the third assignment of error, that it was error for the court to undertake to pass on the deed to Dolmeyer for the benefit of Mrs. Barbara Busch, when they were neither before the court. This seems to be a most palpable error, but it is not error that can prejudice the appellants, and I cannot see that they have any right to complain of it.

The fourth cause of error assigned is, that if the decree had been otherwise right, it was error for the court to pronounce the deed of trust absolutely void, instead of void as to the said defendants, in respect to their debt, and thus deny to the petitioners the right to the surplus, if anything, after satisfying the defendants' demand, to a proper account; and fifth, it was error on the merits for the court to pronounce the deed void and deny the petitioners proper relief on their bill.

In the light in which I view this case, these two assignments of error include the merits of the entire case. In the first place, the appellants had no right to go into a court of equity, on the case made in their bill, because their remedy is complete and adequate in a court of law. *Sheppards* vs. *Turpin*, 3 Grat., 373; *Bowyer* vs. *Creigh*, 3 Rand., 25; *Allen* vs. *Freeland*, Id., 110; *Watkins* vs. *Logan*, 3 Monroe, 21.

In the second place, the deed of trust, in so far as it grants the "cloth, goods, wares, and merchandize, and stock in trade," is null and void as to the said Mack & Brothers, because the reservation in the grantor of the right to sell said stock in the course of business is inconsistent with the object of the trust, and adequate to the defeat thereof. *Long* vs. *Lee*, 3 Rand., 410; *Sheppards* vs. *Turpin*, 2 Grat., 373; *Spence* vs. *Bagwell*, 6 Grat., 444. The agreement contained in the trust to supply the place of any goods sold by addi-

tional purchases, cannot take this case out of the rule in the cases referred to.

It seems to me that the court below should have dissolved the injunction and dismissed the bill for want of jurisdiction, and should have made no decree setting aside the deed of trust as it did. If the court could take jurisdiction, it could only set aside the trust as to the goods, &c., which the grantor reserved the right to sell, and then only to an extent sufficient to satisfy the execution of Mack & Brothers. The decree complained of will have to be reversed, with costs to the appellants, and proceeding to enter the decree which the court below should have rendered, this court must dissolve the injunction and dismiss the bill.

The other judges concurred.

DECREE REVERSED, and bill dismissed.